UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DAVID W. SAWYER, #1108944,

    Petitioner,

v.                                      ACTION NO. 2:16cv592

HAROLD W. CLARKE
*Director of the VA D.O.C.*,

    Respondent.

## UNITED STATES MAGISTRATE JUDGE'S
## REPORT AND RECOMMENDATION

This matter is before the Court on David W. Sawyer's *pro se* petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, and the respondent's motion to dismiss. This matter was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia. For the reasons that follow, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 5, be GRANTED, and the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED WITH PREJUDICE.

### I.    STATEMENT OF THE CASE

**A.    Procedural Background**

Petitioner, David W. Sawyer ("Sawyer"), is in state custody pursuant to convictions in the Circuit Court of the City of Chesapeake ("trial court"). ECF No. 1; Sentencing Order, ECF No. 7-1. On November 20, 2009, a jury convicted Sawyer of possession of fentanyl, possession of hydromorphone, and robbery. Sentencing Order, ECF No. 7-1 at 1. The Court of Appeals of

Virginia ("Court of Appeals") summarized the evidence as follows:

> On January 25, 2009, Nicole Epps was working as a pharmacist at a Walgreen's store in Chesapeake. At about 3:00 p.m., a man wearing a tan camouflage hooded sweatshirt approached the pharmacy counter. The hood covered the sides of the man's head but not his face. Epps asked him several times if she could help him. The man pulled out a note and handed it to Epps. The note said he would hurt Epps if she did not give him certain drugs. Epps was shocked and afraid. After looking at the man for several seconds, Epps went to the narcotics cabinet to get the drugs. The man moved to the end of the counter out of Epps' line of sight, so she mouthed to her assistant to call 911. Epps then approached the man and asked him to tell her again what drugs he wanted. The man leaned forward and whispered that he wanted oxycontin, fentanyl, and morphine. Epps got the drugs from the cabinet and took them to the man. He quickly left the store.
>
> On February 3, 2009, Detective Kirby Standridge presented Epps with a photographic lineup containing appellant's picture and photos of five other suspects.[1] All six photographs were of Caucasian men with facial hair. Standridge told Epps that the person who robbed her might or might not be in the photo spread and she should not feel obligated to select one of the photographs. Epps immediately selected appellant's photograph from the lineup and unequivocally identified him as the person who robbed her. Epps testified at trial that she "recognized him completely" in the lineup. Epps stated that appellant's photograph did not stand out from the others in the lineup as having different characteristics.
>
> At trial, Epps identified appellant as the person who approached the pharmacy counter and robbed her. Epps viewed the videotape of the incident recorded by the store's security cameras. Epps identified appellant as the person in the videotape who approached the pharmacy counter and left the store with the drugs. She described the person who robbed her as a male with a low cut beard and moustache with a reddish tint.

*Sawyer v. Commonwealth*, Record No. 0703-10-1 (Va. Ct. App. Dec. 21, 2010), ECF No. 7-2 at 1–2. On March 18, 2010, in accordance with the jury's recommendation, the trial court sentenced Sawyer to 21 years of imprisonment, with no time suspended. Sentencing Order, ECF No. 7-1 at 1–2.

---

[1] "The skin pigmentation in the photographs of appellant and one of the other suspects differed from the others due to the source of the photographs."

2

Prior to trial, counsel for Sawyer moved to suppress the photo line-up identification and the in-court identification as unduly suggestive and unreliable. *Commonwealth v. Sawyer*, CR09-2294 through CR09-2296 (Va. Cir. Ct. Aug. 13, 2009). The trial court denied the motion to suppress at a hearing on August 28, 2009. Hr'g Tr. 25–27 (Aug. 28, 2009); *Commonwealth v. Sawyer*, CR09-2294 through CR09-2296 (Va. Cir. Ct. Sept. 3, 2009). After trial, Sawyer appealed the trial court's ruling on the motion to suppress. *Sawyer v. Commonwealth*, Record No. 0703-10-1 (Va. Ct. App. Sept. 1, 2010). On December 21, 2010, the Court of Appeals denied the petition for appeal, finding that the record supported the trial court's denial of Sawyer's motion to suppress.[2] *Sawyer v. Commonwealth*, Record No. 0703-10-1 (Va. Ct. App. Dec. 21, 2010), ECF No. 7-2 at 1–3.

On May 19, 2011, Sawyer, through counsel, filed a petition for appeal in the Supreme Court of Virginia. Pet. for App., ECF No. 7-3. Sawyer argued that:

> [t]he Court of Appeals erred in concluding the trial court did not abuse its discretion when it denied appellant's motion to suppress Nicole Epp[s'] out-of-court identification of appellant and then admitted her subsequent in-court identification of him, because it failed to apply the proper legal standard concerning impermissibly suggestive out-of-court identification procedures.

*Id.* at 5.

On May 19, 2010, Sawyer filed a *pro se* petition for a writ of habeas corpus in the trial court alleging eight claims of ineffective assistance of counsel and claiming that the court denied his request for an identification expert. *Sawyer v. Johnson*, Case No. CL10-1218 (Va. Cir. Ct. May 19, 2010) ("State Pet."). On January 27, 2011, the trial court dismissed Sawyer's state

---

[2] In so finding, the Court of Appeals noted that "the difference in pigmentation shown in two of the photographs was not so significant as to render the lineup impermissibly suggestive" and that "the circumstances surrounding Epps' identification of appellant demonstrate that it was reliable." *Sawyer v. Commonwealth*, Record No. 0703-10-1 (Va. Ct. App. Dec. 21, 2010), ECF No. 7-2 at 3.

3

habeas petition. *Sawyer v. Johnson*, Case No. CL10-1218 (Va. Cir. Ct. Jan. 27, 2011); ECF No. 7-6. Sawyer sent a letter to the clerk of the trial court indicating that he wished to appeal the decision to the Supreme Court of Virginia, but no appeal was filed. Letter dated Feb. 12, 2011 (on file with the Cir. Ct. of the City of Chesapeake); Clerk of Ct. Letter dated Aug. 26, 2011, ECF No. 7-7 (returning record to trial court "[b]ecause no petition for appeal has been filed").

On September 30, 2011, the Supreme Court of Virginia refused Sawyer's direct appeal. *Sawyer v. Commonwealth*, Record No. 110942 (Va. Sept. 30, 2011); ECF No. 7-5.

### B. Sawyer's Efforts to Obtain the Photo Line-up

The grounds for relief advanced in Sawyer's federal habeas petition focus on the photo line-up that police presented to Epps, the Walgreens pharmacist, during investigation of the robbery, and Epps' subsequent in-court identification of Sawyer as the robber. ECF No. 1. Sawyer reports repeated attempts to obtain a copy of the photo line-up. After learning that the Supreme Court of Virginia denied his direct appeal, Sawyer requested a copy of the case record from the Supreme Court of Virginia.[3] ECF No. 1 at 21, 68. On April 10, 2012, the Supreme Court of Virginia sent Sawyer a letter stating that the record, transcripts, and exhibits in his case had been returned to the trial court. ECF No. 1 at 68. Sawyer states that he was "perplexed as to how the appellate courts failed to find the photo line-up unduly suggestive," so he filed a motion to preserve evidence in the trial court. ECF No. 1 at 22, 50; *Sawyer v. Commonwealth* (Va. Cir. Ct. Oct. 19, 2012). Sawyer also notified the trial court of his intention to file a petition for a writ

---

[3] Although the Supreme Court of Virginia refused his petition for appeal on September 30, 2011, Sawyer reports that he did not learn of the decision until counsel notified him on or about February 14, 2012. ECF No. 1 at 21, 69.

4

of mandamus in the Supreme Court of Virginia.[4] ECF No. 1 at 22, 51. In addition, Sawyer requested a copy of the line-up from his appellate counsel. ECF No. 1 at 22. Sawyer engaged in subsequent communications with the trial court and counsel, and he eventually received a color copy of the photo line-up from the trial court on January 25, 2013. ECF No. 1 at 22, 56–57.

According to Sawyer, the color copy he received "clearly reveals that the pictures had been altered and this was not how it was presented to the witness or court during the suppression hearing."[5] ECF No. 1 at 22. He wrote a letter to the trial court, alleging that the line-up had been doctored before being forwarded to the appellate court. ECF No. 1 at 23, 60. The deputy clerk of the trial court responded on September 25, 2013, assuring Sawyer that "once the exhibit was introduced at the court hearing it remained in the custody of the Clerk's office and [was] preserved in the manner in which it was introduced." ECF No. 1 at 60. At that time, Sawyer "realized that the prosecutor or designate[] must have altered the photo line-up before publishing it." ECF No. 1 at 23. He states that he "immediately initiated a campaign to acquire" an "unmolested copy" of the photo line-up in order to build a case for prosecutorial misconduct. ECF No. 1 at 24. Sawyer, his father, and Sawyer's friend filed Freedom of Information Act ("FOIA") requests with the trial court and Chesapeake Police Department in February 2013, August 2015, and approximately March 2016, requesting the original records from his case file. ECF No. 1 at 24, 61–64. Those requests were denied. *Id.*

---

[4] The trial court received a copy of Sawyer's petition for a writ of mandamus, but it does not appear that the Supreme Court of Virginia ever received such petition.

[5] Specifically, Sawyer notes that "the background . . . was darkened and colored in." ECF No. 1 at 22–23. He claims that "some agent or employee of the Commonwealth intentionally alter[ed] the backgrounds of the photo line-up to hide the fact that [his] picture was highlighted and this alter[]ation is glaringly obvious from a visual inspection of the line-up, because it[']s apparent that the backgrounds were colored in with a pen or marker." ECF No. 1 at 44.

5

## C. Sawyer's Federal Habeas Petition

Sawyer signed a federal petition for a writ of habeas corpus and placed it in the prison mailing system on September 15, 2016.[6] ECF No. 1. The petition advances the following grounds for relief:

> Ground One: The petitioner was deprived of the due process rights guaranteed by the 5th and 14th Amendments, when agents of the Commonwealth utilized an impermissible out-of-court identification process that was so prejudicially suggestive that it resulted in misidentification of the petitioner and undermined the reliability of the in-court testimony of the witnesses.
>
> Ground Two: The petitioner[']s 6th Amendment[] right to a fair trial and his 14th Amendment[] right to due process and equal protection of the laws were contravened, when agents of the Commonwealth intentionally and unlawfully altered a trial exhibit before it was presented to the appellate court in order to prevent the petitioner from prevailing on the merits of the error assigned pertaining specifically to that exhibit.

ECF No. 1 at 37.

On November 18, 2016, respondent timely filed an answer and moved to dismiss the petition. ECF Nos. 5–7. On December 1, 2016, Sawyer filed a motion for default judgment, asserting that respondent failed to timely file an answer to the petition as required by the order entered October 20, 2016. ECF No. 9. The assertion is incorrect, and the Court recommends that the motion for default judgment be DENIED.

Sawyer filed a reply to respondent's motion to dismiss on December 12, 2016.[7] ECF No. 10. Accordingly, this matter is ripe for review.

---

[6] The *pro se* petition was filed in this Court on October 6, 2016. *Id.* It consists of a 14-page form petition (ECF No. 1 at 1–14), a 35-page handwritten memorandum in support (ECF No. 1 at 15–49), and 43 pages of exhibits (ECF No. 1 at 50–92).

[7] In his reply, Sawyer notes that although respondent filed an answer electronically on November 18, 2016, and certified that a copy was mailed to him on that date, the shipping label "clearly reflects" that the answer "was not mailed until 11-30-16, which explains why [Sawyer] did not receive it until 12-1-16." ECF No. 10 at 1. Sawyer asserts that "[his] ability to adequately

6

## II.  ANALYSIS

**A.  Sawyer's Petition is Time Barred**

The Anti-Terrorism and Effective Death Penalty Act ("AEDPA") provides a one-year statute of limitations for section 2254 petitioners. 28 U.S.C. § 2244(d)(1). The relevant portions of the statute provide that the one-year period begins to run from the *latest* of:

> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> . . . [or]
>
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). This time period tolls when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim" is pending. 28 U.S.C. § 2244(d)(2).

Under 28 U.S.C. § 2244(d)(1)(A), which provides that the statute of limitations may run from "the date on which the judgment became final by the conclusion of direct review," Sawyer filed his federal habeas petition over three and one half years too late. The Supreme Court of Virginia refused Sawyer's direct appeal on September 30, 2011. His conviction became final 90 days later, on December 29, 2011, at the expiration of his time to file a petition for certiorari with the Supreme Court of the United States. *See* 28 U.S.C. § 2244(d)(1)(A); Sup. Ct. R. 13(1) (directing that a notice of appeal must be filed within 90 days after entry of final judgment);

---

perfect a reply has been substantially compromised by the respondent neglecting to mail a copy of h[is] answer, until (12) days after the date it was actually filed, which effectively deprived me of that essential time period." *Id.* at 2. Sawyer did not move for an extension of time to file his reply.

7

*Harris v. Hutchinson*, 209 F.3d 325, 328 n.1 (4th Cir. 2000) (holding that a judgment became final when the 90 day period for filing a petition for certiorari with the United States Supreme Court expired). Accordingly, Sawyer had until December 29, 2012 to file his federal habeas petition. Sawyer did not mail his petition, however, until September 15, 2016.

A petitioner may be entitled to belated commencement of the statute of limitations under 28 U.S.C. § 2244(d)(1)(B) or (D), which provide that the limitations period may run from the date on which an unlawful, state-created impediment to filing the application was removed or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."

In his second ground for relief, Sawyer claims that his federal rights were violated when "agents of the Commonwealth intentionally and unlawfully altered [the photo line-up]" before appellate court review. ECF No. 1 at 37. Sawyer discovered the factual predicate underlying these claims in 2013. On January 25, 2013, Sawyer received a color copy of the photo line-up, which reportedly "reveals that the pictures had been altered." ECF No. 1 at 22. *See also* ECF No. 1 at 56–57. On September 25, 2013, the deputy clerk of the trial court sent Sawyer a letter assuring him that the photo line-up had been preserved in the manner in which it was introduced. ECF No. 1 at 60. Sawyer reports that, upon receiving this letter, he "realized that the prosecutor or designate[] must have altered the photo line-up before publishing it." ECF No. 1 at 23. Even if the Court construes September 25, 2013, or a date shortly thereafter, as the date on which an unlawful, state-created impediment to filing the application was removed, 28 U.S.C. § 2244(d)(1)(B), or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," 28 U.S.C. § 2244(d)(1)(D), Sawyer's one-year period for filing a federal habeas petition would still have expired in late

8

September 2014. Sawyer did not mail his petition, however, until September 15, 2016, nearly two years too late. As a result, his petition is time barred.

**B.     Sawyer is Not Entitled to Equitable Tolling**

Sawyer argues that he is entitled to equitable tolling of the limitations period. He claims that: (1) he is actually innocent; and (2) he pursued his rights diligently, but extraordinary circumstances prevented timely filing. ECF No. 1 at 19.

**1.     Actual Innocence**

To have the merits of his constitutional claims reviewed by this Court, Sawyer seeks an equitable exception from the statute of limitations based on a showing of actual innocence. The Supreme Court has recognized that "actual innocence, if proved, serves as a gateway through which a petitioner may pass" to bring claims after the statute of limitations expires. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). This exception to the statute of limitations "applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *McQuiggin*, 133 S. Ct. at 1933 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). More specifically, the exception requires "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye witness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. If the petitioner provides the court with reliable, newly discovered evidence, then the court weighs the new evidence in light of the previous admissible and inadmissible evidence and makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

The *Schlup* standard is an exceedingly high burden to satisfy and thus only permits review in "extraordinary" cases. *House v. Bell*, 547 U.S. 518, 538 (2006); *see also Schlup*, 513

U.S. at 299. Further, a petitioner's actual innocence claim "'does not by itself provide a basis for relief.'" *Teleguz v. Pearson*, 689 F.3d 322, 328 (4th Cir. 2012) (quoting *Coleman v. Hardy*, 628 F.3d 314, 318 (7th Cir. 2010)). Instead, a petitioner's "claim of innocence is . . . 'a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)).

Sawyer offers no new, reliable evidence to support his actual innocence claim. Instead, he "adamantly asserts" that he is innocent of the crime underlying his convictions, and repeats information—concerning the robbery, investigation, and witness testimony—that was presented at trial. ECF No. 1 at 31–36.

At trial, the Commonwealth called Detective Standridge and two former friends of Sawyer's, Thad Ashley and Michelle Ashley, who were involved in the robbery investigation.[8] Trial Tr. 5–22, 29–36, 36–57 (Nov. 20, 2009). The defense called Robin Moore ("Moore"), an alibi witness and Sawyer's girlfriend at the time of the events in question.[9] Trial Tr. 73–92 (Nov. 20, 2009). Detective Standridge testified about the tip that led to the identification of Sawyer as a suspect, the creation of the photo line-up and the presentation of that line-up to Epps, the still photos of the suspect obtained from store surveillance video, and the various interviews he conducted during the robbery investigation. Trial Tr. 36–57 (Nov. 20, 2009). Thad Ashley and Michelle Ashley ("Thad" and "Michelle") were called to identify the suspect in the surveillance photos. Trial Tr. 6, 8–10, 15–17, 31–32, 35 (Nov. 20, 2009). They also testified about their

---

[8] The Commonwealth also called the robbery witnesses, Epps and LaKendra Lanos, and Kirsten Holmes, a forensic technician with the City of Chesapeake who collected evidence from the Walgreens on the day of the robbery. Trial Tr. 122–83 (Nov. 19, 2009); Trial Tr. 23–29 (Nov. 20, 2009).

[9] The defense also called Moore's brother, Howard Bradshaw. Trial Tr. 62–73 (Nov. 30, 2009).

friendship and apparent falling out with Sawyer, their history with Moore, and their relationship with Sawyer's ex-girlfriend, Jennifer Lewis ("Lewis"). Trial Tr. 5, 12–13, 18–22, 30, 32–35. Thad and Ashley were further examined about the camouflage jacket worn by the robbery suspect. Trial Tr. 5, 7–8, 11, 14, 30–31, 34.

Moore testified to her relationship with Sawyer, her history with the Ashleys, Sawyer's whereabouts on the day of the robbery, his possession of camouflage clothing, the identity of the suspect in the robbery video, and her meeting with Detective Standridge during the robbery investigation. Trial Tr. 73–91 (Nov. 20, 2009).

To support his actual innocence claim, Sawyer contends in his petition that Lewis, his "scorned ex-girlfriend," falsely identified him as the robber after seeing reward posters which included "unrecognizable pictures" of the suspect. ECF No. 1 at 32. Sawyer also states that Thad and Michelle "proffered non-objective speculations that resulted from their vindictive intentions to obtain revenge against" Moore, because Moore may have been responsible for a prior arrest of Thad and the removal of the Ashley's children from their home. ECF No. 1 at 35. Sawyer further notes that Moore provided "credible alibi evidence" about his whereabouts on the day in question, namely that Sawyer was with her the entire day at a hotel. ECF No. 1 at 33.

The issues Sawyer raises concerning the actions and motivations of Lewis, Thad, and Michelle were presented at trial. Detective Standridge testified about the Crimeline tip from Lewis. Trial Tr. 37, 48–49. Thad testified that he had been friends with Sawyer for years, that the two were neighbors, and that they lived together at one time. Trial Tr. 5, 12. In the course of the investigation, Thad met with Detective Standridge and Detective Standridge showed him surveillance photos taken of the suspect during the robbery. Trial Tr. 6. Thad testified that he recognized the camouflage coat worn by the suspect as belonging to Sawyer, and that he "felt

11

pretty certain" he recognized Sawyer in one of the photos. Trial Tr. 7–10, 14. On cross-examination, counsel asked Thad about a "falling out" with Sawyer, and whether Thad had been arrested or forced to give up his children because of Moore. Trial Tr. 12–13. Michelle, Thad's wife, testified that she had known Sawyer for two years, that he owned a hooded camouflage jacket, and that Detective Standridge had also showed her photos of the robbery suspect. Trial Tr. 30–32. She testified that she thought that the suspect "resembled" Sawyer, but she "wasn't sure." Trial Tr. 32. On cross-examination, counsel asked Michelle about her and Thad's falling out with Sawyer, Thad's charge or arrest allegedly caused by Moore, and Michelle's relationship with Lewis. Trial Tr. 32–35. Michelle also testified that her children had been taken away from her. Trial Tr. 33. Through cross-examination, defense counsel further suggested that Thad, Michelle, and Lewis teamed up to turn Sawyer in and obtain a $1,000.00 reward. Trial Tr. 20–22, 33, 35 (Nov. 20, 2009). In light of the foregoing, Sawyer's contentions regarding Lewis, Thad, and Michelle do not constitute new evidence supporting his innocence.

In his petition, Sawyer also states that Moore told Detective Standridge that she and Sawyer were together "the entire day" at the "Seagull Motel" on the day of the robbery. ECF No. 1 at 33. However, as Sawyer himself notes, this alibi evidence was also presented at trial. Moore testified that Sawyer was with her at the motel all day on the robbery date, and the receipt for their stay was entered into evidence.[10] Trial Tr. 74–78, 84; ECF No. 1 at 33.

Attached to his petition, Sawyer includes an exhibit labeled "Robin Moore[']s Pre-trial Statements." ECF No. 1 at 49, 80–88. The typed, unsigned statement, reportedly authored by Moore, describes the circumstances surrounding Sawyer's arrest. The statement asserts that Sawyer and Moore moved to the motel after Lewis began stalking and harassing them. ECF No.

---

[10] Sawyer, through counsel, also raised Moore's alibi testimony on appeal. Pet. for App., ECF No. 7-3 at 9.

1 at 80–81, 87. The statement also explains that Moore reported Thad and Michelle to social services after witnessing them "shoot[] up" heroin, and that social services removed the children from their custody. ECF No. 1 at 83. According to the statement, at the time of Sawyer's arrest, Lewis and the Ashleys were calling Moore to make serious threats. Moore met with Detective Standridge, looked at the photos of the robbery suspect, told him that the man in the photos was not Sawyer, and stated that Sawyer was with her on the day in question. ECF No. 1 at 86–88. The statement further notes that Thad, rather than Sawyer, owned a camouflage hooded jacket and that Thad "grew facial hair to look just like [Sawyer.]" ECF No. 1 at 85, 87.

The substance of the events described in the statement was presented at trial. Moore testified that there was "bad blood" between her and the Ashleys, and that she reported them to social services and had Thad arrested. Trial Tr. 82–84. She testified that she told Detective Standridge that Sawyer was with her at the motel on the day of the robbery. Trial Tr. 89. Moore also testified that Sawyer did not own a hooded camouflage jacket and that Sawyer was not the suspect captured on the surveillance photos or video. Trial Tr. 79–82, 91. As a result, the statement Sawyer has attached to his petition does not offer new evidence. Moreover, the typed, unsigned statement is unreliable and, therefore, to the extent that the statement includes details not testified to at trial, any such details do not justify an actual innocence finding.[11]

In arguing for an equitable exception from the statute of limitations based on a showing of actual innocence, Sawyer also reviews his claims concerning the impermissibly suggestive nature of the photo line-up. ECF No. 1 at 32, 36. However, the allegations do not constitute

---

[11] In his petition, Sawyer also cites to an affidavit from Robin Moore as offering "undisputed proof of an alibi during the time period in question." ECF No. 1 at 36. He includes "Robin Moore[']s Affidavit" on his exhibit list, ECF No. 1 at 49, but does not attach any such affidavit.

new, credible evidence supporting his innocence. As a result, he has not met the *Schlup* standard and is not entitled to equitable tolling on that basis.

### 2. Extraordinary Circumstances

Sawyer also argues that he is entitled to equitable tolling because he pursued his rights diligently, but extraordinary circumstances prevented timely filing. ECF No. 1 at 19.

Although AEDPA's statute of limitations provision is subject to equitable tolling, the petitioner bears the burden of demonstrating that (1) he pursued his rights diligently, and (2) some extraordinary circumstance stood in his way that prevented timely filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *Harris*, 209 F.3d at 329–30. Moreover, courts must reserve application of equitable tolling to situations in which, "due to circumstances external to the party's own conduct," enforcement of the AEDPA one-year limitations period would be "unconscionable" and result in "gross injustice." *Harris*, 209 F.3d at 330.

First, Sawyer asserts that he diligently pursued his rights, initially by moving to set aside the verdict and filing a direct appeal. ECF No. 1 at 27. He reports that once his direct appeal was denied, he "diligently attempted to obtain copies of the relevant case file, and particularly the color line-up," and cites to the above-discussed requests he submitted to the courts and counsel. ECF No. 1 at 27; *supra* pp. 4–5. Next, Sawyer notes that he filed a petition for a writ of habeas corpus in state court, and sent a letter presenting his present grounds for relief to various courts and legal associations.[12] ECF No. 1 at 28–29, 72–74.

---

[12] Sawyer states that he sent the letter to the trial court, the Court of Appeals of Virginia, the Supreme Court of Virginia, U.S. District Court (Richmond division), the U.S. Court of Appeals for the Fourth Circuit, the Chesapeake public defenders office, the governor of Virginia, and several innocence projects and civil rights groups. ECF No. 1 at 28–29. The letter does not appear in the case records from the Supreme Court of Virginia, the Court of Appeals of Virginia,

14

Second, Sawyer argues that the trial court's "intentional delay" in providing him a color copy of the photo line-up constitutes an "extraordinary circumstance" that prevented timely filing of his petition. ECF No. 1 at 30. Sawyer reviews his efforts to obtain his case file, particularly "the original unmolested copy" of the photo line-up, and claims to have been "prevented by the state at every endeavor." ECF No. 1 at 29–30. He contends that these circumstances "presented an actual and substantial impediment to presenting the claims in a procedurally acceptable manner." ECF No. 1 at 30.

Sawyer admits that he received a color copy of the photo line-up on January 25, 2013. ECF No. 1 at 22. He states that such receipt came "over one year from final judgment," so that he was unable to file a federal petition for a writ of habeas corpus within the limitations period provided by 28 U.S.C. § 2244(d)(1)(A). *See* ECF No. 1 at 23, 30. Sawyer's receipt of the color line-up outside that limitations period, however, does not make his present petition timely when, *after* receiving the color line-up, he waited over three and one half years to submit the petition. *See* 28 U.S.C. § 2244(d)(1)(B) and (D) (providing a one year limitations period which may run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence").

Sawyer suggests that he needed to obtain, or diligently seek, the original photo line-up before filing his federal petition. *See, e.g.*, ECF No. 1 at 24, 30; ECF No. 10 at 5. However, Sawyer raised his first ground for relief before trial and on direct appeal to the Court of Appeals and the Supreme Court of Virginia; his lack of possession of the original line-up did not prevent

---

or the U.S. District Court for the Eastern District of Virginia (except as attached to the instant petition); however, the letter is contained in the trial court records.

him from bringing the suggestiveness claim in a timely federal petition. With respect to his second ground for relief, even if the state's initial failure to provide Sawyer with the original line-up constitutes an extraordinary circumstance that precluded the bringing of that claim, the trial court did provide a color copy of the line-up, as well as a subsequent letter, to Sawyer, and Sawyer claims he was able to appreciate the reported alteration based on those documents. Sawyer, however, failed to diligently pursue his rights after making the alleged alteration discovery. As discussed above, Sawyer realized the basis for his claim after receiving the color copy on January 25, 2013, and the letter from the deputy clerk dated September 25, 2013. ECF No. 1 at 22–23. Sawyer then waited three years to submit his federal petition. As a result, Sawyer's federal limitations period is not subject to equitable tolling.[13]

## C. Evidentiary Hearing

Sawyer requests an evidentiary hearing pursuant to Rule 8 of the Rules Governing Section 2254 Cases, or for the Court to permit discovery and expand the record pursuant to Rules 6 and 7, so that he may obtain the original photo line-up. ECF No. 1 at 48; ECF No. 10 at 3, 5, 8. The Court "may grant an evidentiary hearing in a § 2254 case only where the petitioner has 'allege[d] additional facts that, if true, would entitle him to relief' and has 'establish[ed] one of

---

[13] Respondent also contends that the premise of Sawyer's alteration claim is flawed because Sawyer's attorneys had access to the photo line-up at trial and on direct appeal. ECF No. 7 at 10–11. "Had the lineup been altered, his counsel were in a position to raise that issue, particularly since the suggestiveness of the photograph line-up was at issue at trial and on appeal." ECF No. 7 at 11. The Court notes, however, that Sawyer had different counsel at trial and on appeal and, according to Sawyer, appellate counsel did not receive a color copy of the photo line-up. *Sawyer v. Commonwealth*, Record No. 0703-10-1 (Va. Ct. App. July 23, 2010) (granting trial counsel's motion to withdraw and appointing new counsel for appeal); ECF No. 1 at 22, 53, 55. Because appellate counsel did not represent Sawyer during the suppression hearing or at trial when the original line-up was presented, appellate counsel would not have been in a position to recognize any alleged alterations in the line-up when the Court of Appeals reviewed it. As a result, the Court assigns little weight to respondent's argument in this regard.

the six factors set forth in *Townsend v. Sain,* 372 U.S. 293, 312, 83 S. Ct. 745, 9 L. Ed. 2d 770 (1963).'"[14] *Robinson v. Polk,* 438 F.3d 350, 368 (4th Cir. 2006) (quoting *Fullwood v. Lee,* 290 F.3d 663, 681 (4th Cir. 2002)). As discussed above, Sawyer has failed to allege additional facts that would entitle him to relief. Accordingly, Sawyer's request for an evidentiary hearing is DENIED because a hearing would not aid in the decisional process. Similarly, because the Court recommends that the petition be dismissed on the pleadings, Sawyer's request to expand the record is DENIED. *See* Rule 7 of the Rules Governing Section 2254 Cases.

Rule 6(a) of the Rules Governing Section 2254 Cases requires that a habeas petitioner show good cause before the Court authorizes him to conduct discovery. "Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief." *Quesinberry v. Taylor,* 162 F.3d 273, 279 (4th Cir. 1998) (citing *Harris v. Nelson,* 394 U.S. 286, 300 (1969); *Bracy v. Gramley,* 520 U.S. 899, 908–09 (1997)). Sawyer has not made such a showing, and his request for discovery is DENIED.

### III. RECOMMENDATION

For the foregoing reasons, the Court RECOMMENDS that respondent's motion to dismiss, ECF No. 5, be GRANTED, the petition for a writ of habeas corpus, ECF No. 1, be DENIED and DISMISSED WITH PREJUDICE, and Sawyer's motion for default judgment, ECF No. 9, be DENIED.

---

[14] Those six factors are: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. *Townsend,* 372 U.S. at 313.

## IV. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this report to the objecting party, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a *de novo* determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

/s/ Robert J. Krask
United States Magistrate Judge

Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
June 27, 2017